# U.S. DISTRICT COURT
# MIDDLE DISTRICT OF FLORIDA
# (TAMPA DIVISION)

XAVIER A BRACCO,

    Plaintiff,

v.　　　　　　　　　　　　　　　　　　Case No.: 8:16-cv-1640-T-33TBM

PNC MORTGAGE,

    Defendant.

_____/

## DEFENDANT'S MOTION TO DISMISS PLAINTIFF'S AMENDED COMPLAINT

Defendant, PNC MORTGAGE, ("PNC"), by and through its undersigned counsel, pursuant to Federal Rule of Civil Procedure 12(b)(6), files this Motion to Dismiss Plaintiff's Amended Complaint (the "Motion") and states as follows:

## PRELIMINARY STATEMENT

This case is yet another instance of "lawsuit farming," where plaintiff submits a spurious request for information in an attempt to manufacture a technical statutory violation to obtain monetary damages.[1] Here, Plaintiff (the borrower) and his counsel sent PNC, an absurd letter that purported to be a request for information ("RFI") asking for loss mitigation submissions, a current payoff statement, and notices of servicing transfer related to Plaintiff's mortgage (the "Mortgage"), despite the Mortgage having been satisfied nearly six months

---

[1] See Guillame v. Federal National Mortgage Association, 928 F. Supp. 2d 1337, 1341 (S.D. Fla. 2012) (dismissing complaint that was not grounded upon genuine failures of disclosure or surreptitious loan practices, but rather on an excessive "attempt to leverage settlement and obtain fees ... [s]uch actions are contrary to the intent of the statute and ... fail as a matter of law.").

prior to the time the purported RFI was sent.[2] None of the requests in the Plaintiff's purported RFI relate to the servicing of the Loan.[3] The absurdity of this request is further compounded after PNC sent Plaintiff a letter acknowledging the RFI, followed by a second letter substantively responding to the RFI, only to receive another correspondence from Plaintiff's counsel **four months after receipt of PNC's substantive response** claiming that PNC violated the Real Estate Settlement Procedures Act ("RESPA"), by failing to provide Plaintiff written acknowledgment of the RFI within five days.[4] Plaintiff made no mention of

---

[2] A Satisfaction of Mortgage for the Plaintiff's Mortgage was recorded on April 30, 2015, at BK 2567, PG 3601 Official Records of Manatee County. A true and correct copy is attached hereto as **Exhibit "A"**. The Court may consider the Satisfaction of Mortgage without converting the Motion to Dismiss to a motion for summary judgment as it is central to the Plaintiff's claims and is undisputed. See Day v. Taylor, 400 F. 3d 1272, 1276 (11th Cir. 2005); see also Fed R. Civ. P. 10(c); Correa v. BAC Home Loans Servicing LP, No. 6:11-CV-1197-ORL-22, 2012 WL 1176701, at *4 (M.D. Fla. Apr. 9, 2012) (finding that a foreclosure complaint and mortgage, that were not in dispute, were central to FDCPA claims arising from same, and that therefore the documents would be considered in evaluating the motion to dismiss). Alternatively, the court may take judicial notice of the Satisfaction of Mortgage and consider the same without converting the Motion to Dismiss into a motion for summary judgment. Universal Express, Inc. v. SEC, 177 F. App'x 52, 53 (11th Cir. 2006) (per curiam) (finding that a district court may consider public records without converting a motion to dismiss into a motion for summary judgment).

[3] On June 29, 2016, in Hudgins v. Seterus, Inc., case number 9:16CV80338, currently pending in the Southern District of Florida, Judge Bloom entered an order dismissing Plaintiff's complaint that included claims for RESPA violations based on the exact same form requests that were used in the Plaintiff's purported RFI. Judge Bloom held that the seven requests are not "related to the servicing of a loan" and therefore no response was required from PNC, thus no RESPA violation occurred. The form letter and requests sent in Hudgins, was also sent by the same law firm representing Plaintiff in this matter, Korte & Wortman, P.A. A true and correct copy of Judge Bloom's order granting the motion to dismiss in Hudgins is attached and incorporated hereto as **Exhibit "B"**.

[4] See D.E. 2, Exhibit "C" to the Amended Complaint; PNC's November 3, 2015 acknowledgment letter and December 9, 2015 response letter sent to the Plaintiff by PNC, true and correct copies of which are attached an incorporated herein as **Composite Exhibit "C"**. The Court may consider these letters in ruling upon a Motion to Dismiss without

needing further clarification regarding the information requested in the RFI, or that PNC's response was somehow insufficient, rather his only complaint was the failure to receive an acknowledgement letter from PNC within the five days prescribed by statute. [D.E. 2, Ex. C to the Amended Complaint].

Plaintiff subsequently filed this Amended Complaint, alleging a violation of RESPA, 12 U.S.C. § 2605(k). However, none of the Plaintiff's requests relate to the servicing of the loan as defined by the statute, the Plaintiff received both an acknowledgment letter and substantive response letter to his purported RFI, and the Plaintiff has suffered no actual damages from the alleged violation of failing to timely send an acknowledgment letter. Plaintiff's claim is purely an attempt to elicit immaterial violations of the above-referenced statutes in order to obtain a monetary windfall through settlement or damages. As such, dismissal with prejudice of Plaintiff's Amended Complaint is warranted for failure to state a claim and also pursuant to the "anti-absurdity canon."

## I. PROCEDURAL BACKGROUND

On January 31, 2013, a Foreclosure Action was filed against the Plaintiff's property. A true and correct copy of the docket and Mortgage is attached to this Motion as **Composite Exhibit "D"**.[5] Following trial on March 10, 2015, Final Judgment of Foreclosure was

---

converting it to a Motion for Summary Judgment as they are central to the Plaintiff's alleged RESPA violation claims and are undisputed. See Day, 400 F. 3d at 1276; see also Correa, No. 6:11-CV-1197-ORL-22, 2012 WL 1176701, at *4.

[5] The Court may also consider the Foreclosure Action, filings therein, and the Mortgage without converting the Motion to Dismiss into a motion for summary judgment as it is central to Plaintiff's allegations and the relationship between the parties, the applicability of RESPA rests upon the Mortgage, it is undisputed, and is a recorded public record. See Day,

entered in favor of PNC. [See docket, Composite Exhibit "D".] On April 30, 2015, the Plaintiff executed a short sale of the Property which led to the recording of a Satisfaction of Mortgage by PNC, and the vacature of the Final Judgment and dismissal of the Foreclosure Action on PNC's motion. [*Id.*; Exhibit "A"]. Six months later, on October 26, 2015, PNC received a letter from Plaintiff purporting to be an RFI. [D.E. 2, ¶ 15]. PNC acknowledged the Plaintiff's purported RFI on November 3, 2015, and then substantively responded to the purported RFI on December 9, 2015. [Composite Ex. "C"]. Four months later, on April 11, 2016, despite having already received a substantive response to the purported RFI, Plaintiff's counsel sent PNC a letter claiming that PNC had failed to provide Plaintiff written acknowledgment of the purported RFI within five days. Plaintiff made no mention of needing further clarification regarding the information requested in the purported RFI, or that PNC's response was somehow insufficient. [D.E. 2, Ex. C to the Amended Complaint].

On May 10, 2016, Plaintiff then proceeded to file a Complaint in County Court for the Sixth Judicial Circuit, in and for Pinellas County, Florida, styled *Xavier A. Bracco v. PNC Mortgage*, Case No.: 16-005183-SC (the "State Court Action"), which was subsequently Amended on June 3, 2016. [D.E. 2]. This matter was then removed to this Court by PNC on June 20, 2016. [D.E. 1].

## II.   STANDARD OF REVIEW

Federal Rule of Civil Procedure 12(b)(6) allows a complaint to be dismissed for failure to state a claim upon which relief can be granted. To avoid dismissal under Rule 12(b)(6), the factual allegations in the complaint must "state a claim to relief that is plausible

---

400 F. 3d at 1276; Universal Express, Inc., 177 F. App'x at 53; see also Correa, No. 6:11-CV-1197-ORL-22, 2012 WL 1176701, at *4.

on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007). "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, ... a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do ...." Id. at 555. In making this plausibility determination, a court must accept the factual allegations as true; however, this "tenet ... is inapplicable to legal conclusions." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009).

Once an exhibit is attached to a pleading, it "is part of the pleading for all purposes." Fed. R. Civ. P. 10(c). "When evaluating a motion to dismiss pursuant to Rule 12(b)(6), the Court's analysis is 'limited primarily to the face of the complaint and the attachments thereto.'" Brooks v. Blue Cross & Blue Shield of Fla., Inc., 116 F.3d 1364, 1368-69 (11th Cir. 1997). However, "the Court may consider a document attached to a motion to dismiss without converting the motion into one for summary judgment if the attached document is (1) central to the plaintiff's claim and (2) undisputed. In this context, "undisputed" means that the authenticity of the document is not challenged." Day, 400 F.3d at 1276. This Court may also take judicial notice of the documents filed in the state court Foreclosure Action or the public records. See, e.g., Popescu v. JP Morgan Chase & Co., 2013 WL 5535867, at *1 (S.D. Fla. Oct. 7, 2013); Universal Express, Inc., 177 F. App'x at 53. A court must dismiss a cause of action when, "on the basis of a dispositive issue of law, no construction of the factual allegations will support the cause of action." Marshall Cnty. Bd. of Educ. v. Marshall Cnty. Gas. Dist., 992 F.2d 1171, 1174 (11th Cir. 1993).

1172416.1

5

## III. PLAINTIFF'S AMENDED COMPLAINT SHOULD BE DISMISSED AS IT FAILS TO STATE A CLAIM UNDER 12 U.S.C. 2605(k)

In order to survive a motion to dismiss, Plaintiff's Amended Complaint must sufficiently allege that "1) Defendant is a loan servicer; 2) Defendant received a QWR [("Qualified Written Request")] from Plaintiff; 3) the QWR relates to servicing of mortgage [a] loan; 4) Defendant failed to respond adequately; and 5) Plaintiff is entitled to actual or statutory damages." Porciello v. Bank of Am., N.A., 2015 WL 899942, at *3 (M.D. Fla. Mar. 3, 2015); see also Correa v. BAC Home Loans Serv. LP, 2012 WL 1176701, at *6 (M.D. Fla. Apr. 9, 2012) (citing Frazile v. EMC Mortg. Corp., 382 Fed. App'x. 833, 836 (11th Cir. 2010)).

Plaintiff's purported RFI sets forth seven requests for information, none of which relate to the servicing of the Plaintiff's Loan, and therefore no response was required. Additionally, Plaintiff suffered no actual damages, because he received the acknowledgement letter before sending the alleged notice of error to PNC from which he seeks to create his own damages.

### A. Plaintiff's initial purported RFI does not qualify as an RFI under RESPA because none of his requests are related to servicing the Plaintiff's loan.

Numerous courts have held that information "related to loan servicing" includes "information about the receipt of periodic payments or the amounts of such payments." Richardson v. Rosenberg & Associates LLC, 2014 WL 823655, at *8 (D. Md. Feb. 27, 2014) (citing Minson v. CitiMortgage, Inc., 2013 WL 2383658, at *5 (D. Md. May 29, 2013)); see also Smallwood v. Bank of America, N.A., 2015 WL 7736876, at *6 (S.D. Ohio Dec. 1, 2015) ("'Servicing' is defined within the statute as 'receiving any scheduled periodic

1172416.1

6

payments from a borrower pursuant to the terms of any loan' and 'making the payments of principal and interest and such other payments with respect to the amounts received from the borrower as may be required pursuant to the terms of the loan.'") (quoting 12 U.S.C. §§ 2605(e)(1)(A) and (i)(3)). Moreover, a form request sent by the borrower for the purpose of conducting an audit of his account does not qualify as a request under RESPA to which a servicer must respond because it does not relate to the servicing of the loan. See Hopson v. Chase Home Fin. LLC, 14 F. Supp. 3d 774, 787 (S.D. Miss. 2014), aff'd sub nom. Hopson v. Chase Home Fin., L.L.C., 605 F. App'x 267 (5th Cir. 2015) (form request from borrower for information to conduct an audit of his account obtained by copy and pasting 192 requests from the internet, not related to the servicing of his loan, and did not qualify as a QWR under RESPA); Watts v. Fed. Home Loan Mortgage Corp., No. CIV. 12-692 SRN/JSM, 2012 WL 6928124, at *10 (D. Minn. Oct. 30, 2012), report and recommendation adopted, No. 12-CV-692 SRN/JSM, 2013 WL 268939 (D. Minn. Jan. 24, 2013) (same).

Plaintiff's form letter[6] purporting to be an RFI, includes the following seven requests,

---

[6] Undersigned counsel for PNC has located 16 other cases filed by Plaintiff's counsel, Korte & Wortman, P.A., which have been removed to the Southern and Middle Districts of Florida since December 2015, all of which include claims based on purported RFI letters that are identical to the one sent by Plaintiff in the present action. See Benitez v. Select Portfolio Servicing, LLC, 9:15-cv-81714, (S.D. Fla., Dec. 15, 2015); Blaise v. Wells Fargo Bank, N.A., 9:15-cv-81673 (S.D. Fla., Dec. 9, 2015); Boyle v. U.S. Bank, N.A., 9:15-cv-81788 (S.D. Fla., Dec. 31, 2015); Brown v. U.S. Bank, N.A., 9:15-cv-81695 (S.D. Fla., Dec. 11, 2015); Dandridge v. J.P. Morgan Chase & Co., 9:15-cv-81778 (S.D. Fla., Dec. 30, 2015); Gonzales v. J.P. Morgan Chase & Co., 9:15-cv-81776 (S.D. Fla., Dec. 30, 2015); Guzman v. U.S. Bank, N.A., 9:15-cv-81743 (S.D. Fla., Dec. 12, 2015); Haller v. J.P. Morgan Chase & Co., 9:16-cv-80027 (S.D. Fla., Jan. 6, 2016); Johnson v. MGC Mortgage, Inc., 9:16-cv-81048 (S.D. Fla., June 22, 2016); Kinter v. U.S. Bank, N.A., 9:15-cv-81787 (S.D. Fla., Dec. 31, 2015); Linscheid v. J.P. Morgan Chase & Co., 9:15-cv-81733 (S.D. Fla., Dec. 12, 2015); Martin v. PNC Mortgage, 8:16-cv-01704 (M.D. Fla., June 22, 2016); Michaels v. J.P. Morgan Chase & Co., 9:16-cv-80042 (S.D. Fla., Jan. 11, 2016); Mottola v. OCWEN Loan

"Specifically, I am requesting the following information for the period beginning January 10, 2014, until your receipt of this request (the 'applicable period'):

1. All correspondence between your company, subsidiaries, servicers attached to this loan that were sent to the borrower from January 10, 2014, through to the present; and proof of mailing, including but not limited to fed ex tracking numbers, certified mail receipts, and/or a letter log showing the date the letter was sent.

2. All five (5) day letters between your company, subsidiaries, servicers following and loss mitigation applications/submissions to this loan that were sent to the borrower from January 10, 2014, through to the present; and proof of mailing, including but not limited to fed ex tracking numbers, certified mail receipts, and/or a letter log showing the date the letter was sent.

3. All thirty (30) day letters between your company, subsidiaries, servicers following any loss mitigation applications/submissions to this loan that were sent to the borrower from January 10, 2014, through to the present; and proof of mailing, including but not limited to fed ex tracking numbers, certified mail receipts, and/or a letter log showing the date the letter was sent.

---

Servicing, LLC, 9:15-cv-81759 (S.D. Fla., Dec. 28, 2015); Perry v. U.S. Bank, N.A., 3:15-cv-01489 (S.D. Fla., Dec. 17, 2015); Smith v. J.P. Morgan Chase & Co., 9:15-cv-81779 (S.D. Fla., Dec. 30, 2015). In addition, counsel is aware of numerous other matters currently pending in county courts around the state of Florida, involving the identical purported RFI letter sent by Korte & Wortman, P.A., on behalf of the borrower. In nearly all these cases, the purported RFI letter is undated, and many, like the Plaintiff's letter presently, do not even include the borrower's account number. In addition, many of the borrowers and the properties at issue, are located throughout the United States See Dandridge, 9:15-cv-81778 (S.D. Fla., Dec. 30, 2015) (Brunswick, GA); Gonzales, 9:15-cv-81776 (S.D. Fla., Dec. 30, 2015) (Nashua, NH); Linscheid, 9:15-cv-81733 (S.D. Fla., Dec. 12, 2015) (Danbury, WA); Martin, 8:16-cv-01704 (M.D. Fla., June 22, 2016) (Roanoke, VA); Michaels, 9:16-cv-80042 (S.D. Fla., Jan. 11, 2016) (North Babylon, NY); Mottola, 9:15-cv-81759 (S.D. Fla., Dec. 28, 2015) (Aston, PA). How can any of these identical form letters which are being sent out in bulk by Korte & Wortman for properties around the country that have been foreclosed, short sold, had the mortgage satisfied, had a permanent loan modification entered, had the borrower evicted from the property, or are in default, relate to real concerns regarding the servicing of borrower's loans? How can the same form letter apply such different scenarios for borrowers? The answer is that they cannot, and are not, related to the servicing of each borrower's individual loan. Rather, these requests are merely an attempt to obtain information in order to conduct an audit of the loan in search of technical violations in order to file suit and try to strong arm settlements and damages from servicers.

4. All letter [sic] explaining the right to appeal the denial of the modification (if applicable) between your company, subsidiaries, servicers following any loss mitigation applications/submissions to this loan that were sent to the borrower from January 10, 2014, through to the present; and proof of mailing, including but not limited to fed ex tracking numbers, certified mail receipts, and/or a letter log showing the date the letter was sent.

5. All system notes/logs that show the receipt of the loss mitigation submission and that reflect all responses sent to the borrower from January 10, 2014, through to the present.

6. A current pay off statement.

7. Copies of all Notice of Service transfers that were sent to the borrower and proof of mailing, including but not limited to fed ex tracking numbers, certified mail receipts, and/or a letter log showing the date the notice was sent."

[D.E. 2, Ex. "A" to Amended Complaint].

None of these seven requests relate to the servicing of the Plaintiff's Loan. Request number one and seven request copies of correspondence sent by PNC to the Plaintiff, and proof of mailing the same. The Eleventh Circuit has affirmed the proposition that a request for a correspondence file is outside the scope of RESPA because it does not relate to servicing. See Sirote v. BBVA Compass Bank, 857 F. Supp. 2d 1213, 1214 (N.D. Ala. 2010), *aff'd*, 462 F. App'x 888 (11th Cir. 2012). The Plaintiff's requests do not relate to "receiving any scheduled periodic payments from a borrower pursuant to the terms of any loan" or "making the payments of principal and interest and such other payments with respect to the amounts received from the borrower as may be required pursuant to the terms of the loan." 12 U.S.C. § 2605(i)(3). As such, items one and seven in Plaintiff's purported RFI triggered no obligation for PNC to respond.

Next, requests two through five request documents concerning loss mitigation. Inquiries about loss mitigation do not relate to "servicing" within the meaning of 12 U.S.C. § 2605. See Williams v. Wells Fargo Bank, N.A., 2010 WL 1463521, at *3 (N.D. Cal. Apr. 13, 2010); see also Smallwood, 2015 WL 7736876, at *6, n. 12; see also Sirote, 857 F. Supp. 2d at 1214 (N.D. Ala. 2010), aff'd, 462 F. App'x 888 (11th Cir. 2012); Mbakpuo v. Civil Wells Fargo Bank, N.A., 2015 WL 4485504, at *8 (D. Md. July 21, 2015); Mayer v. EMC Morg. Corp., 2014 WL 1607443, at *5-6 (N.D. Ind. April 22, 2014); Van Egmond v. Wells Fargo Home Mortgage, 2012 WL 1033281, at *4 (C.D. Cal. Mar. 21, 2012) (RESPA "only obligates loan servicers to respond to borrowers' requests for information relating to *servicing* of their loans, which does not include loan modification information.") (citing 12 U.S.C. §§ 2605(e) and (i)(3)) (emphasis in original). In fact, a completely different provision of RESPA's notice of error and request for information provisions relate to loss mitigation inquiries and a servicer's obligations with respect to the same. See 12 C.F.R. § 1024.40. Therefore, PNC had no obligation to respond to requests two through five in his purported RFI.

Plaintiff's final request number six for a payoff statement, is not even governed by RESPA, but rather by TILA. See 15 U.S.C. 1639(g). Requests for "account statements, payment schedules, and other documents evidencing payments made on the accounts" do not relate to servicing. See *Sirote*, 857 F. Supp. 2d at 1223 (citing *Gates v. Wachovia Mortgage, FSB*, 2010 WL 2606511, at *3 (E.D. Cal. June 28, 2010).

As explained in *Sirote* (and affirmed by the Eleventh Circuit),

> A simple inquiry into payments made, without more, cannot be interpreted as either 'a statement of the reasons for the belief of the borrower,

to the extent applicable, that the account is in error,' or, 'providing sufficient detail to the servicer regarding other information sought by the borrower,' as required by RESPA. 12 U.S.C. § 2605(e)(1)(B)(ii). In other words, *an unadorned request for a statement of payments made toward a loan is not an allegation of a servicing error.*

*Id.* at 1222 (emphasis in the original) (alteration omitted) (quoting *Gates*, 2010 WL 2606511, at *3). Moreover, at the time this purported RFI was sent, a Satisfaction of Mortgage had been recorded for the Plaintiff's loan as part of the Plaintiff's short sale. Request number six for a current payoff statement is not related to servicing the loan, and therefore no response was required by PNC. In Hudgins, Judge Bloom in the Southern District of Florida dismissed the plaintiff's complaint involving an **identical purported RFI** for its failure to relate to the servicing of the plaintiff's loan. Likewise, this Court should follow the well-reasoned analysis of Judge Bloom, and also dismiss Plaintiff's complaint for failure to send an RFI that related to the servicing of his loan. [Exhibit "B"].

B.  **Plaintiff's claim must be dismissed as he has failed to allege actual damages or has created his own damages.**

The Eleventh Circuit Court of Appeal has held that actual damages are necessary to state a claim under section 2605(f)(1) of RESPA. See Frazile, 382 Fed. App'x. at 836 (11th Cir. 2010); See also McLean v. GMAC Mortgage Corp., 595 F. Supp. 2d 1360, 1365 (S.D. Fla. 2009). Costs incurred while preparing and sending a request for information under RESPA cannot serve as a basis for damages because, at the time those expenses are incurred, there has been no RESPA violation. See Long v. Residential Credit Sols., Inc., No. 9:15-CV-80590, 2015 WL 4983507, at *1 (S.D. Fla. Aug. 21, 2015). Costs incurred in efforts to pursue compliance with an initial request for information after receiving no response, or an inadequate response, qualifies as actual damages under RESPA. See Rodriguez v. Seterus,

Inc., No. 15-61253-CIV, 2015 WL 5677182, at *3 (S.D. Fla. Sept. 28, 2015) (damages associated with follow-up requests, because of a failure to respond or an improper response by a defendant, have been found to qualify as actual damages under RESPA); O'Brien v. Seterus, Inc., No. 9:15-CV-80300, 2015 WL 4514512, at *3 (S.D. Fla. July 24, 2015) (damages associated with a *second* qualified written request, sent because of an improper response by a defendant, have been found to qualify as actual damages under RESPA); Russell v. Nationstar Mortgage, LLC, No. 4-61977-CIV, 2015 WL 541893, at *2 (S.D. Fla. Feb. 10, 2015) (plaintiffs' costs involved in sending follow up letter to pursue compliance with their initial QWR as a result of defendants failure to adequately respond to the initial QWR considered actual damages).

The above cases illustrate that the courts are only willing to consider postage an actual damage when the letter sent was required to obtain a sufficient response to the initial purported RFI. Here, unlike in those cases where the subsequent letters are sent to obtain compliance with the statute, Plaintiff's second letter claiming that PNC failed to acknowledge the Plaintiff's purported RFI within five days was completely unnecessary. Specifically, at the time Plaintiff sent his second letter, the Plaintiff had already received a written acknowledgment from PNC. Moreover, PNC had also sent a substantive response to Plaintiff's purported RFI on December 9, 2015. Thus, Plaintiff's second letter was not sent in an effort to compel compliance with the initial purported RFI, therefore the costs incurred in sending the second letter cannot be actual damages.

In fact, in the second letter, Plaintiff only complained of not receiving a written acknowledgment within five days, and made no mention to any other violation or issue with

1172416.1

12

the substantive response sent by PNC. Since he had already received both the written acknowledgement and substantive response from PNC, sending the second letter was done solely to manufacture damages, rather than as a meaningful attempt to compel compliance with the initial purported RFI or obtain information about the servicing of his loan as the statute intended. Plaintiff suffered no harm after receiving PNC's acknowledgment letter, and is not entitled to create his own damages by sending a letter that served absolutely no purpose at all, other than to try and manufacture a claim. The Eleventh Circuit Court of Appeal has held that damages which are due to the plaintiff's own conduct, do not qualify as actual damages. See Coursen v. Shapiro & Fishman, GP, 588 F. App'x 882, 886 (11th Cir. 2014) (affirming the dismissal of the plaintiff's FDCPA and FCCPA claims because she had caused her own damages by failing to maintain her mortgage payments which led to the foreclosure of her home, and thus she could not establish a causal link between her damages and the defendant's alleged conduct); see also Archbold v. Tristate ATM, Inc., No. 11 CV 5796 SJ LB, 2012 WL 3887167, at *5 (E.D.N.Y. Sept. 7, 2012) (plaintiff was not entitled to actual damages where the damages claimed were of plaintiffs' own making, and the plaintiff had not suffered any actual harm as a result of defendant's statutory violations).

## IV. PLAINTIFF'S CLAIM SHOULD ALSO BE DISMISSED PURSUANT TO THE ANTI-ABSURDITY CANON

Under the anti-absurdity canon, federal courts have the power to preserve the integrity of a statute by preventing an absurd result in its application. See Silva-Hernandez v. U.S. Bureau of Immigration Servs., 701 F.3d 356, 363 (11th Cir. 2012). Specifically, where application of a statute would be contrary to the spirit and the purpose as intended by Congress, "the intention of the drafters...controls," even where there is a technical violation.

See Holy Trinity Church v. United States, 143 U.S. 457, 459 (1892) ("It is a familiar rule that a thing may be within the letter of the statute and yet not within the statute, because not within its spirit nor within the intention of its makers"); United States v. Ron Pair Enters., Inc., 489 U.S. 235 (1989).

Plaintiff should not be allowed to benefit from alleged violations of RESPA resulting from Plaintiff's insincere attempts to obtain information regarding loss mitigation efforts and payoff of his Mortgage, when his Mortgage had been satisfied for over six months. The purported RFI sent by Plaintiff, through counsel, to PNC on October 26, 2015, was merely sent in the hopes of giving rise to a technical violation of RESPA. Accordingly, PNC also requests that this Court dismiss the Amended Complaint in order to maintain Congress's intent and protect RESPA from manipulative practices attempting to distort its respective effect.

Section 2605(k) of RESPA was not enacted to enable the creation of artificial claims. See 12 U.S.C. § 2601(a). To the contrary, the statute was created to provide borrowers timely and accurate information about their mortgages. 12 U.S.C. § 2601(a). It is illogical to presume that Congress, in its efforts to assist borrowers in obtaining access to loan information, intended for individuals to exploit RESPA by seeking recovery of damages through meritless or manufactured claims. Thus, where a RESPA action is not grounded on genuine failures of disclosure or surreptitious loan practices, but rather on an excessive "attempt to leverage settlement and obtain fees. . . [s]uch actions. . . are contrary to the intent of the statute and . . . fail as a matter of law." See Guillame, 928 F. Supp. 2d at 1341 (S.D. Fla. 2013).

In Guillame, the court rejected the plaintiffs' claim for a TILA violation where they had made a request for information to the defendant while there were foreclosure proceedings pending between the parties. Id. The court found that plaintiffs did not "**suffer from any meaningful deprivation of information** concerning their mortgage loan. . ." Id. (emphasis added). Although the general rule is that a court should not look past the plain meaning of a statute, when the purpose of the statute is contradicted by its application then the court should look to the intention of the drafters. Id.; United States v. Ron Pair Enters., Inc., 489 U.S. 235, 242 (1989). See Zuni Pub. Sch. Dist. No. 89 v. Dep't of Educ., 550 U.S. 81, 105 (2007) (J. Stevens, concurring) ("As long as the court is faithful to the intent of Congress, the decision to override the strict interpretation of the text is a correct performance of the judicial function.").

Like the borrower in Guillame, the Plaintiff has not suffered from "any meaningful deprivation of information concerning [his] mortgage loan" when he sent his second correspondence to PNC solely with the intent to manufacture a claim under RESPA. Guillame, 928 F. Supp. 2d at 1341 (S.D. Fla. 2013). The absurdity of Plaintiff's purported RFI is fully borne out by his request for a payoff statement for the Mortgage six months after he completed a short sale that satisfied the Mortgage. His other requests seeking information specifically regarding loss mitigation responses regarding the Mortgage and service transfers make absolutely no sense given that PNC had previously approved him for a short sale, completed the same, and recorded a Satisfaction of Mortgage. Even beyond the absurdity of the purported RFI itself, Plaintiff is only claiming a violation due to PNC's failure to acknowledge the request within five days. [D.E. 2, ¶ 24]. Plaintiff waited more than five

1172416.1

15

months after sending the purported RFI, and another four months after receiving PNC's acknowledgment and substantive response to his purported RFI, to send any additional correspondence to PNC. Then, his second correspondence to PNC wholly fails to raise any complaint regarding PNC's substantive response, but rather complains only of PNC's technical failure to acknowledge the purported RFI within five days of receipt. [D.E. 2, Ex. C]. This type of complaint is the antithesis of what the legislature intended when enacting RESPA, and is exactly the type of scenario for which the Anti-Absurdity Canon exists to prevent. There was no need to send the second correspondence, because the Plaintiff had already received an acknowledgment letter and substantive response to the purported RFI. He had suffered no "meaningful deprivation of information concerning [his] mortgage loan." Guillame, 928 F. Supp. 2d at 1341 (S.D. Fla. 2013). The sending of his second correspondence was done purely with the intent to try and manufacture a claim under RESPA, and Plaintiff's Amended Complaint should therefore be dismissed with prejudice pursuant to the Anti-Absurdity Canon.

## V. CONCLUSION

Plaintiff's purported RFI cannot be considered a legitimate inquiry for material information relating to the servicing of his loan. Instead, it is an attempt to induce a technical violation of RESPA solely to fabricate a claim for monetary compensation. Plaintiff did not suffer any meaningful deprivation of information as a result of PNC's alleged failure to timely acknowledge the purported RFI, and it would be adverse to Congressional intent to permit Plaintiff to benefit from an inconsequential one day technical violation.

WHEREFORE, for the above reasons, the Court should dismiss Plaintiff's Amended Complaint with prejudice for failure to state a claim under 12 U.S.C. 2605(k) and pursuant to the Anti-Absurdity Canon, and Order any further relief the Court deems just and proper.

Dated: July 5, 2016.

Respectfully Submitted,

McGLINCHEY STAFFORD

By: /s/ *Gabriel M. Hartsell*
R. Carter Burgess, Esq.
Fla. Bar No. 058298
Gabriel M. Hartsell, Esq.
Fla. Bar No. 89345
10407 Centurion Parkway N., Suite 200
Jacksonville, FL 32256
Telephone: (904) 224-4449
Fax: (904) 369-9686
cburgess@mcglinchey.com
ghartsell@mcglinchey.com

*Attorneys and Trial Counsel for PNC Mortgage*

## CERTIFICATE OF SERVICE

     I HEREBY CERTIFY that a true and correct copy of the foregoing was electronically filed with the Clerk of the Court using CM/ECF on July 5, 2016. I also certify that the foregoing document is being served this day on the following counsel of record via transmission of Electronic Filing generated by CM/ECF:

Liz Cline, Esq.
LCline@kwlawfirm.com
Korte & Wortman, PA
2325 Ulmerton Rd. Ste. 16
Clearwater, FL 33762
*Attorney for Plaintiff Xavier Bracco*

                                                              /s/ *Gabriel M. Hartsell*
                                                                    Attorney