UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA

CASE NO: 8:16-cv-1640-T-33TBM

XAVIER BRACCO,

    Plaintiff,

v.

PNC MORTGAGE,

    Defendant
_____/

## PLAINTIFF'S RESPONSE IN OPPOSITION
## TO THE MOTION TO DISMISS
## with MEMORANDUM OF LAW

COMES NOW, the Plaintiff, XAVIER BRACCO, by and through the undersigned counsel, and pursuant to Fed.. R. Civ. P. 12(b)(6) and hereby files this Response in Opposition to Defendant's Motion to Dismiss, along with an Accompanying Memorandum of Law, and states as follows:

1. The Plaintiff through his agent law firm Korte & Wortman, P.A., filed a complaint against the Defendant for a CFPB Regulation X violation, emerging from the failure to timely acknowledge receipt of a Request for Information (RFI) within five days as required by 12 C.F.R. §1024.36(c).

2. The Defendant has filed a Motion to Dismiss on several grounds. The first ground is that the RFI does not qualify as such under RESPA because the requests are not related to servicing of the loan, so there was not duty to acknowledge it under RESPA. (MTD at 6). The second ground is that Plaintiff failed to allege actual damages, an element of the

1

cause of action. (MTD at 11). And the third ground is that this case should be dismissed under the "anti-absurdity canon."  (MTD at 13).

3.	The Plaintiff will address all three arguments to show that a plausible *prima facie* claim for relief has been pled in the proper venue, and as such, the Motion to Dismiss should be denied.

**MEMORANDUM OF LAW**

(A). The RFI qualified as such under RESPA because it was related to servicing

The Defendant claims that the Plaintiff failed to request information "related to the servicing of the loan," and as such, fall outside the scope of RESPA. Some of the RFIs (#2,3,4,5) deal with requests related to loan modification, others are more generic relating to service transfers documents or correspondence files (#1,7), and another requested the payoff statement (#6). The Defendant claims that none of these "related to servicing."

Servicing is defined as relating to "receiving any scheduled periodic payments from a borrower pursuant to the terms of any loan … and making the payments of principal and interest and such other payments with respect to the amounts received from the borrower as may be required pursuant to the terms of the loan. 12 U.S.C. A. §2605(i)(3).

A *prima facie* RESPA case is established by pleading that (1) the Defendant was a loan servicer, (2) the Defendant received a QWR/RFI from the plaintiff, (3) the QWR/RFI related to the servicing of the mortgage loan, (4) Defendant failed to adequately respond, and (5) Plaintiff is entitled to actual or statutory damages. Porciello v. Bank of America, N.A., 2015 U.S. Dist. LEXIS 26002 (M.D. Fla. March 3, 2015).  The plaintiff here pled a prima facie case in the Amended Complaint.  Several courts have held that a simple failure to acknowledge/reply to an

RFI/ QWR,[1] plus correlated damages,[2] is what constitutes a sufficiently articulated RESPA violation. The Plaintiff has met that burden here.

There really is no way to get a payoff quote from anyone *other than a servicer*. And there is no one else *but a servicer* to direct inquiries about how badly botched an attempted loan modification was, other than to retrieve the entire correspondence file and other information surrounding the lackluster, systematic unresponsiveness the borrower endured from the servicer.

Specifically, in the context of seeking information about the loan modification correspondence and documents, several federal cases have found RESPA claims perfectly viable. Wilson v. Bank of America, N.A., 48 F.Supp.3d 787, 805 (E.D.Pa. 2014) (sufficient allegation of RESPA violation where loan servicer sent borrower responses with contradictory explanations

---

[1] "RESPA requires servicers to take certain actions and provide certain written responses after receiving a QWR." Lupo v. JP Morgan Chase Bank, N.A., 2015 U.S. Dist. LEXIS 130869, at 52 (U.S.Md. Sept. 28, 2015) (SLS cannot succeed on its motion to dismiss simply by arguing that "Plaintiff failed to allege when his purported QWRs were received by SLS" where the "Plaintiff pleads facts sufficient to allege that his July 1 fax went unacknowledged by SLS during the [] statutory window established by RESPA"); Kapsis v. Am. Home Mortg. Servicing, Inc., 923 F. Supp.2d 430, 446 (E.D.N.Y. 2013) (treating as QWRs those communications listed in the amended complaint and determining that the defendant loan servicer's duty to respond under RESPA was triggered when the "plaintiff indicates when the letter was sent, to whom it was sent, why it was sent, and a summary of the request contained therein"); Henok v. Chase Home Fin., LLC, 915 F.Supp.2d 109, 119 (D.D.C. 2013) (determining that the plaintiff's allegation that he sent letters to defendant mortgagee stated a claim under § 2605(e)(1) for failure to respond).

[2] Porciello v. Bank of America, N.A., 2015 U.S. Dist. LEXIS 26002 (M.D. Fla. March 3, 2015) (denying a motion to dismiss and finding the allegations sufficient to state a RESPA claim for actual damages); see also Mellentine v. Ameriquest Morg. Co., 515 Fed. Appx. 419, 424-25 (6th Cir. 2013) (reversing dismissal of RESPA claim under Rule 12(c) where plaintiffs alleged that defendant responded to their QWR ten days after the statutory time period and their complaint alleged "damages in an amount not yet ascertained, to be proven at trial"); Marais v. Chase Home Fin., LLC, 24 F. Supp. 3d 712, 718 (S.D. Ohio 2014) (finding that an allegation that bank's failure to respond adequately to plaintiff's QWR were sufficiently alleged alongside with an "entitlement to 'an amount awarded to a complainant to compensate for a proven injury or loss; damages that replace actual losses'"); Justice v. Ocwen Loan Servicing, 2:13-CV-165 (S.D. Ohio Jan. 16, 2015) ("these costs transformed from transactions costs incident to obtaining information about their loan into damages 'as a result of' Ocwen's failure to respond").

for why her loan could not be modified, and varying explanations meant that no "reasonable investigation" had occurred with respect to the notice of error). In Bennett, the borrowers "believe[d] that Bank of America and Rushmore [their servicer] denied them certain loss mitigation options that would have helped them keep their home" and "still refused to provide them with the information they needed" and brought suit under RESPA. Bennett v. Bank of Am., N.A., 2015 U.S. Dist. LEXIS 113948 at 1, 22 (E.D. Ky. 2015) ("allegations … [the servicer] provided inaccurate or incomplete information, and … failed to perform an adequate investigation to obtain the requested information" … "are sufficient [to] state[] a plausible claim for relief under section 2605").

Even in the case cited by the Defendant—Smallwood v. Bank of America, N.A., 2015 U.S. Dist. LEXIS 160926 (S.D.Ohio Dec. 1, 2015), one of the reasons that the court found information related to loan mod as not related to servicing is because the plaintiff failed to cite any cases. Slip op. at 23 ("Plaintiffs do not cite any case law in support of this argument"). Here, Plaintiff cited two cases above. In addition, right here in the Southern District of Florida, in the case of Paz v. Seterus, Inc., 2015 U.S. Dist. LEXIS 94693, slip op. at 4-5 (S.D. Fla. July 15, 2015), the court found how a servicer responds (by both receipt and evaluation) to loan modification applications is intended to be covered under RESPA and Regulation X, citing §1024.41(b)(2) and §1024.41(c).

The other reason Smallwood did not find the information relating to the loan modification as coming within the ambit of the definition of servicing is because the 2013 letter preceded Regulation X's effective date of January 2014. Smallwood, slip op. at 24-25 fn.12. Obviously, the RFI letter here is dated after the change in Regulation X in 2014, changing the entire dynamic, and leading to a conclusion that every one of the items on the RFI, including

those geared towards unearthing the loan modification paperwork, were aspects and extensions of the "servicing" relationship and the "continuity of contact" that Congress and the Bureau envisioned between the borrower and the servicer. §1024.41(b).

As Defendant fails to present any legal reason why the items included in the RFI do not reference items related to the servicing of the loan, the Motion to Dismiss cannot be granted on this ground. The letter is compliant with RESPA, and created a duty to timely acknowledge as required by RESPA and Regulation X.

### (B). Actual Damages were Sufficiently Pled to Withstand a Motion to Dismiss

There is a liberality for pleading "actual damages" because RESPA was designed by Congress to serve as a consumer protection statute, and as such, it is to be liberally construed to best serve Congressional intent. McLean v. GMAC Mortg., Corp., 398 Fed. Appx. 467, 471 (11th Cir. 2010) (courts are required to "liberally" interpret "actual damages" as RESPA is a consumer-protection statute that is "remedial in nature" and "prescribes [servicer's] responding to borrower inquiries," and allows for the recovery of non-pecuniary damages, such as emotional distress and pain and suffering); see also Burdick v. Bank of America, 2015 U.S. Dist. LEXIS 98236 (S.D. Fla. July 28, 2015) (agreeing with the general intent of Congress to make RESPA a consumer protection statute, and denying summary judgment on the Fair Debt Collections Practices Act and RESPA claims); Porciello v. Bank of America, N.A., 2015 U.S. Dist. LEXIS 26002 (M.D. Fla. March 3, 2015) ("RESPA has been held to be a consumer protection statute, and as such, the term 'actual damages' is to be construed broadly").

To state a claim under RESPA, a plaintiff must allege facts showing she has suffered actual damages or is entitled to statutory damages. Paz v. Seterus, Inc., 2015 U.S. Dist. LEXIS 94693

(S.D. Fla. July 15, 2015); Burdick v. Bank of America, 2015 U.S. Dist. LEXIS 98236, slip op. at 13 (S.D. Fla. July 28, 2015) ("if a loan servicer fails to comply with the statute, an individual borrower may recover any actual damages, and up to $2000 in statutory damages 'if there is a pattern or practice of noncompliance with RESPA'"). Clearly, the CAPO Complaint reflects that the plaintiff has elected to travel solely on "actual damages" as a basis for recovery, not in pleading a statutory "pattern and practice" theory, and as such, should survive this motion to dismiss.[3] The CAPO Complaint specifically outlines that it has received damages as result of Nationstar's failure to comply with Regulation X and RESPA, and that those damage include preparation fees, photocopying fees, postage and attorney's fees and costs.

In McLean v. GMAC Mortg., Corp., 398 Fed. Appx. 467 (11th Cir, 2010), the Eleventh Circuit acknowledged that there was no "specific definition" for "actual damages" within the meaning of §2605(f)(1)(A), but that an individual borrower was entitled to recover damages caused by a loan servicer's failure to comply with any of the provisions of RESPA, including up to a $2,000 in cases where pattern and practice of noncompliance was shown. §2605(f). The term "actual damages include pecuniary damages such as (1) out of pocket expenses incurred in dealing with the RESPA violation, including the expense for preparing, photocopying and obtaining certified copies of correspondence, (2) lost time and inconvenience, such as time spent

---

[3] Indeed, at an early dismissal stage, most courts opt to find that actual damages, over statutory pattern and practice, were sufficiently pled. Russell v. Nationstar Morg., LLC, 2015 U.S. Dist. LEXIS 15833 (S.D. Fla. Feb. 9, 2015), the court found the plaintiff's allegation that defendant inadequately responded to two QWRs as insufficient to sustain a statutory damage claim for a continuous pattern and practice, but sufficient enough to allege actual damages. Russell, slip op. at 7-8, citing Marais v. Chase Home Fin., LLC, 24 F. Supp. 3d 712, 718 (S.D. Ohio 2014) (finding that an allegation that bank's failure to respond adequately to plaintiff's QWR were sufficiently alleged alongside with an "entitlement to 'an amount awarded to a complainant to compensate for a proven injury or loss; damages that replace actual losses'"); Porciello v. Bank of America, N.A., 2015 U.S. Dist. LEXIS 26002 (M.D. Fla. March 3, 2015) (denying a motion to dismiss and finding the allegations sufficient to state a RESPA claim for actual damages, but not statutory).

away from employment while preparing correspondence to the loan servicer, to the exist it resulted in actual pecuniary loss (3) late fees and (4) denial of credit or denial of access to a full amount of credit line." McLean, 595 F. Supp. 2d at 1366. "[T]he cost to prepare a QWR may qualify as actual damages." Justice v. Ocwen Loan Servicing, 2:13-CV-165 (S.D. Ohio Jan. 16, 2015); Marais v. Chase Home Finance, LLC, 736 F. 3d 711, 721 (6th Cir. 2013); Paz v. Seterus, Inc., 2015 U.S. Dist. LEXIS 94693, slip op. at 7-8 (S.D. Fla. July 15, 2015) (RESPA damages include "expenses associated with legal services rendered as a result of the improperly obtained foreclosure judgment and emotional distress").

The Marais case was initially taken up to the Sixth Circuit, where the panel found that expenses incurred by the borrower, in postage and attorney's fees, became actual damages when the servicer ignored its statutory duties. Marais v. Chase Home Finance, LLC, 736 F. 3d 711 (6th Cir. 2013) (no distinction for damages between first QWR letter and a subsequent follow up, and that both served as grounds for actual damages, and reversing the district court's grant of a motion to dismiss); see also Mellentine v. Ameriquest Morg. Co., 515 Fed. Appx. 419, 424-25 (6th Cir. 2013) (reversing dismissal of RESPA claim under Rule 12(c) where plaintiffs alleged that defendant responded to their QWR ten days after the statutory time period and their complaint alleged "damages in an amount not yet ascertained, to be proven at trial").

In this case as well, the plaintiff has alleged that as a result of the bank's failure to comply with Regulation X and RESPA, Plaintiff has suffered actual damages that include, but are not limited to, photocopying costs, postage costs, and attorney's fees and costs. (Amended Complaint ¶26). Under Marais and Mellentine, this allegation of damages is perfectly sufficient under RESPA to plead "actual damages" and consonant with the goals of RESPA to punish the lack of adherence by the bank to the statutory scheme.

A court prematurely dismissing under the failed logic to treat initial postage as *de minimus*, is in effect, also robbing or preventing the cumulative development of "pattern and practice" statutory damage claims on that same violation as well. Thus, a bank could repeatedly ignore the very first obligation of receipt acknowledgment under 12 U.S.C. §2605(e)(1)(A), 12 C.F.R. §1024.36(c), and if the first set of mailing expenses are not treated as recoverable damages under 12 U.S.C. §2605(f)(1)(A), borrowers and other watchdog private attorney generals would also be eclipsed from establishing pattern and practice for repeated violations of that section as well.

For these reasons, the damages alleged are sufficient where the case was filed, in Small Claims Court in Pinellas County, as they demonstrate an actual harm to Plaintiff. In the event that this court determines that the damages as alleged fail to meet this court's heightened pleading standard, Plaintiff respectfully requests leave to amend.

### (C). There is No Absurdity where RESPA contemplates claims exactly like the one at bar to enhance consumer protections.

The Defendant asserts that Plaintiff's RESPA complaint violates the "anti-absurdity canon" because the issuance of the QWR/RFI was used as a conduit to elicit a RESPA violation and that dismissal is warranted to maintain Congressional intent and protect the purposes of RESPA. Essentially, the Defendant accuses the Plaintiff of using RESPA in a manner to manipulate claims, and cites a 2013 TILA case, Guillame v. Fed. Nat'l Mortg. Assoc., 928 F.Supp.2d 1337, 1341 (S.D.Fla. 2013), to imply that a disingenuous inquiry had been made.

The Defendant confuses Congressional intent—because the people that Congress sought to protect from manipulative practices were consumers-homeowners, not lenders and servicers. The Real Estate Settlement Procedures Act [RESPA] has purposes that are similar to the Truth in

Lending Act [TILA], to "insure that consumers throughout the Nation are provided with greater and more timely information on the nature and costs of the settlement process and are protected from unnecessarily high settlement charges caused by certain abusive practices that have developed in some areas of the country." Marais v. Chase Home Finance, LLC, 736 F. 3d 711 (6th Cir. 2013); Lage v. Ocwen Loan Servicing, LLC, 2015 U.S. Dist. LEXIS 156658, slip op. at 19 (Nov. 18, 2015) (under RESPA, the CFPB is tasked with prescribing rules and regulations, as well as interpretations, as may be necessary to achieve RESPA's purpose, and one such implementing regulation, Regulation X, places various obligations on mortgage servicers when a borrower submits a loss mitigation application).

RESPA, coupled with its implementation Regulation X, places an *onus on the bank* to act with "reasonable diligence" and good faith, and to respond and clarify by a certain specified time, and provides for damages from the recalcitrant conduct of the bank that Congress intended to punish. 12 U.S.C. §2605(e); 124 Stat. 1376, 2184; Pub. L. 111-203 §1463(c)(2) and (3); 12 C.F.R. §1024 et seq.; Correa v. BAC Home Loans Servicing, LP, 853 F.Supp.2d 1203, 1207 (M.D. Fla. 2012) ("RESPA is a consumer protection statute that … plac[es] requirements on entities or persons responsible for servicing federally related mortgage loans"). Regulation X and its "mandates" for review/replies by/from servicers have an effective date of January 10, 2014. Lage, slip op. At 22-23.

The January 10, 2014 Effective Date was not chosen haphazardly; rather, the CFPB sought to strike a balance between the needs of both servicers and borrowers:

> [The January 10, 2014 Effective Date] will ensure that consumers
> receive the protections in these rules as soon as reasonably
> practicable, taking into account the timeframes established by the
> Dodd-Frank Act, the need for a coordinated approach to facilitate
> implementation of the rules' overlapping provisions, and the need

9

> to afford covered persons sufficient time to implement the more complex or resource-intensive new requirements.

Lage, slip op. at 26-27, citing Mortgage Servicing Rules Under the Real Estate Settlement Procedures Act (Regulation X), 78 Fed. Reg. 10696-01, 10842 (Feb. 14, 2013) (hereinafter, "CFPB Final Rule and Official Interpretation").

The Regulation sets forth very technical requirements with which it expects banks/servicers to comply by having their houses in order to be able to do so. Thus, within five days of receipt of a Qualified Written Request, a servicer is required to send correspondence acknowledging receipt. 12 U.S.C. §2605(e)(1)(a). And within thirty days of receipt, per Section 2605(e)(2), in response to a customer inquiry—

> the servicer must: (1) make appropriate corrections in the account of the borrower and transmit a written notification of such correction; (2) after conducting an investigation, provide the borrower with a written explanation that includes a statement of the reasons for which the servicer believes the account is correct, and the name and telephone number of an employee or department that can provide further assistance; or (3) after conducting an investigation, provide the borrower with a written explanation that includes the information requested by the borrower or an explanation of why the information requested is unavailable, along with the name and telephone number of an employee or department that can provide further assistance.

Regulation X has the same statutory time frame contemplated for the banks after receipt of a Request for Information (RFI). Regulation X, 12 C.F.R. §1024.36(c); Wilson v. Bank of America, N.A., No. 14-2498 (E.D. Pa. Sept. 24, 2014) (Regulation X heightens the requirement on servicers from merely conducting an "investigation" for the information to conducting a "reasonable search for the requested information").

Thus, there is no "absurdity" intended here by either Congress or the Consumer Financial Protection Bureau in supplying these time frames for responses to QWRs and RFIs, *and the*

*expectation that banks get their houses in order to respond to customer inquiries*. Again, Regulation X and its technicalities were created specifically because too many homeowners lost their homes to foreclosure because of the less than stellar service by the servicing banks in meaningfully reviewing their loan modification applications. In this case, the servicer bank's lack of timely response is what engendered the RESPA violation, not the plaintiff's issuance of an RFI or QWR to somehow "trap" the bank into being unresponsive. Thus, the underlying violation is completely in keeping with the "spirit and purpose" of Regulation X and RESPA to punish servicers and lenders who had routinely and systematically ignored borrower requests, *and apparently still continue to do so*.

While the Defendant may not care for the fact that a simple failure to acknowledge/reply may constitute a violation, several courts find that *that* is exactly what is proscribed. The failure to acknowledge a QWR is sufficient to state a RESPA claim because "RESPA requires servicers to take certain actions and provide certain written responses after receiving a QWR." <u>Lupo v. JP Morgan Chase Bank, N.A.</u>, 2015 U.S. Dist. LEXIS 130869, at 52 (U.S.Md. Sept. 28, 2015).[4]

As this cause of action is specifically permitted by RESPA and Regulation X, it is not absurd as a matter of law to seek enforcement of it in court. For these reasons, the Motion to Dismiss cannot be granted on this ground.

---

[4]<u>Lupo</u>, *supra* (SLS cannot succeed on its motion to dismiss simply by arguing that "Plaintiff failed to allege when his purported QWRs were received by SLS" where the "Plaintiff pleads facts sufficient to allege that his July 1 fax went unacknowledged by SLS during the [] statutory window established by RESPA"); <u>Kapsis v. Am. Home Mortg. Servicing, Inc.</u>, 923 F. Supp.2d 430, 446 (E.D.N.Y. 2013) (treating as QWRs those communications listed in the amended complaint and determining that the defendant loan servicer's duty to respond under RESPA was triggered when the "plaintiff indicates when the letter was sent, to whom it was sent, why it was sent, and a summary of the request contained therein"); <u>Henok v. Chase Home Fin., LLC</u>, 915 F.Supp.2d 109, 119 (D.D.C. 2013) (determining that the plaintiff's allegation that he sent letters to defendant mortgagee stated a claim under § 2605(e)(1) for failure to respond).

WHEREFORE, PREMISES CONSIDERED, the Plaintiff respectfully requests that this court deny the Motion to Dismiss for the reasons outlined above.

Respectfully submitted, this the 22nd of July 2016.

By: */s/Liz Cline*
Liz Cline, Esq. (FBN 86823)
Korte & Wortman, P.A.
2325 Ulmerton Rd., Suite 16
Clearwater, FL 33762
(727) 216-3129 Office
(561) 245-9075 Fax
service@kwlawfirm.com;
lcline@kwlawfirm.com

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that on this 22nd of July 2016, a true and correct copy of the foregoing document by Notice of Electronic Filing, or alternatively, emailing counsel for the Defendant at: Gabriel M. Hartsell, Esq., R. Carter Burgess, Esq., ghartsell@mcglinchey.com; cburgess@mcglinchey.com.

By: */s/Liz Cline*
Liz Cline, Esq. (FBN 86823)